# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZAHARA MUHAMMED NAKIYAGA,<br>Petitioner,<br>v.<br>FERETI SEMAIA, et al.,<br>Respondents. | **CASE NO.** 5:26-CV-05359-CTS<br><br>**ORDER REQUIRING THE FILING OF ADDITIONAL INFORMATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

On September 15, 2026, Petitioner Zahara Muhammed Nakiyaga ("Petitioner"), represented by counsel, filed a Petition for Writ of Habeas Corpus ("Petition"). (Pet., ECF No. 1.) The Petition alleges that Petitioner is in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") in Adelanto, California, and that she is being held in violation of the Constitution and laws of the United States. (*See generally* Pet.) Petitioner also filed, the same day as her Petition, an *Ex Parte* Application for Temporary Restraining Order (ECF No. 6), which the Court denied without prejudice on September 17, 2026 (ECF No. 7).

On September 22, 2026, Respondents filed an Answer to the Petition. (Ans., ECF No. 9.) The Answer is supported by the declaration of Lourdes Palacios, a

Deportation Officer with DHS ("Palacios Declaration"). (ECF No. 9-2.) On September 25, 2026, Petitioner filed her Traverse and Reply ("Traverse"). (Trav., ECF No. 12.) The same day, Respondents filed a Notice of Intended Removal, informing the Court that Petitioner is scheduled for transfer outside the Central District on October 3, 2026, to effectuate her removal from the United States. (ECF No. 11.) Because Petitioner does not request that this Court vacate or stay her removal order, because the Court does not have jurisdiction to do so, and for the additional reasons set forth below, the Court postpones ruling on the Petition, pending further information from Respondents as ordered herein.

## I. BACKGROUND

Petitioner is a native and citizen of Uganda. (Pet. ¶ 45.[1]) She applied for admission to the United States at the Los Angeles International Airport on March 16, 2019, but did not have a valid entry document at that time. (Palacios Decl. Ex. A, ECF No. 9-3, at 1.) On September 16, 2019, Petitioner was ordered released on a $5,000 immigration bond. (Pet. ¶ 6.) On October 11, 2019, an immigration judge ("IJ") ordered Petitioner removed to Uganda. (Palacios Decl. ¶ 5; *id.* at Ex. A.) On June 15, 2026, the Board of Immigration Appeals ("BIA") affirmed the IJ's decision. (*Id.* at ¶ 6; *id.* at Ex. B.)

While Petitioner's removal proceedings were pending before the BIA, she married Saeed Kiggundu on July 8, 2025. (Pet. Ex. C.) Mr. Kiggundu added Petitioner to his then-pending asylum application as a derivative beneficiary. (Pet. ¶ 2.) Mr. Kiggundu's asylum application was granted on May 4, 2026, but Petitioner's derivative asylum status was not adjudicated. (*Id.* at ¶¶ 2–3.) The couple immediately took steps "to obtain correction of the unresolved derivative

[1] Pinpoint citations refer to paragraphs and, where none, to the page numbers in the CM/ECF-generated headers of filed documents.

issue." (*Id.* at ¶ 5.) However, on August 27, 2026, Petitioner was taken into custody when she appeared voluntarily for a scheduled ICE check-in. (*Id.* at ¶ 6.) Officers did not show her a warrant of removal. (*Id.* at ¶ 29.)

On September 1, 2026, Petitioner was presented with paperwork relating to travel documents, which she did not sign because she did not understand it and wanted to consult with her attorney first. (*Id.* at ¶ 33.) A document dated September 1, 2026, which was given to Petitioner around that time, states that "[t]he following is a list of things you are required to complete within 30 days of receiving this form[] in order [to] comply with your obligation to assist in obtaining a travel document," and that "[f]ailure to comply . . . may result in the extension of the removal period and subject you to further detention." (*Id*. at ¶ 34; *id.* at Ex. E 22.) The next day, an ICE officer returned with the same travel document paperwork, and Petitioner provided her husband's name and telephone number, which seemed to satisfy the officer. (*Id.* at ¶ 35.) On September 13, 2026, ICE approved Petitioner's request for her husband to bring her a suitcase, but officers were unable to provide details regarding a travel date or itinerary for her removal. (*Id.* at ¶ 37.)

By the time the Answer was filed on September 22, 2026, Respondents were in possession of a valid travel document from Uganda for Petitioner and were in the process of scheduling Petitioner on an October 5, 2026 commercial flight to Uganda. (Palacios Decl. ¶¶ 7–8.) While the Answer includes as an attachment a copy of the travel document, however, it does not include a copy of a warrant of removal.

## II. DISCUSSION

The Petition explicitly states that it challenges only Petitioner's present physical custody, and that it "does not ask this Court to grant derivative asylum, review the merits of Petitioner's removal order, or substitute its judgment for that of

EOIR or USCIS." (Pet. ¶ 8.) However, much of the Petition reflects Petitioner's understandable frustration with the fact that she was not granted derivative asylee status when her husband's asylum application was granted. For instance, Count I of the Petition is entitled "Fifth Amendment Procedural Due Process: Government-Created Derivative Asylum Adjudicatory Failure." (Pet. 22.) Whether or not Petitioner *should* have been granted derivative asylum is not a question this Court can address; likewise, whether or not Petitioner *should* currently be subject to a final removal order, this Court does not have jurisdiction to change the fact that she is, at this moment, subject to such an order. 8 U.S.C. § 1252(g). Further, Petitioner has expressly disavowed any intent to request such relief from this Court: "The Petition does not ask this Court to vacate the removal order, grant derivative asylum, adjudicate the pending motion to reopen or Form I-730 petition, or stay removal solely because those matters remain unresolved. Rather, it challenges Petitioner's current physical detention and seeks relief directed to her custodian: release, conditional release, or constitutionally adequate custody procedures." (Trav. 2.) Thus, Petitioner's current detention must be evaluated in light of the fact that she is, undisputedly, subject to a final order of removal at this moment in time.

The detention of noncitizens subject to final orders of removal is governed by 8 U.S.C. § 1231(a). *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) (noting that Section 1231(a) "governs the detention, release, and removal of individuals 'ordered removed'"). That statute states that, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). Detention is required during the removal period. 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the alien."). The removal period may be "extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents

necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). Only certain individuals may be detained beyond the end of the removal period. 8 U.S.C. § 1231(a)(6). Thus,

> After the removal period expires, the Government "may" detain only four categories of people: (1) those who are "inadmissible" on certain specified grounds; (2) those who are "removable" on certain specified grounds; (3) those it determines "to be a risk to the community"; and (4) those it determines to be "unlikely to comply with the order of removal."

*Johnson*, 596 U.S. at 578–79. Even for these individuals, however, continued detention is permissible only "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future," as "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). After the removal period has ended, or—for those individuals who fall within one of the four categories set forth in 8 U.S.C. § 1231(a)(6)—after it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future, the "alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3).

The logic of Petitioner's challenge to her current detention is therefore as follows. Her removal order became administratively final on June 15, 2026. (Palacios Decl. ¶ 6; *id.* at Ex. B.) The "removal period" defined in 8 U.S.C. § 1231(a)(1)(A) thus began for Petitioner on that date, regardless of the fact that she was not actually detained until two-and-half months later. 8 U.S.C. § 1231(a)(1)(B). Therefore, the 90-day removal period during which Petitioner's detention was mandatory under 8 U.S.C. § 1231(a)(2)(A) ended on September 13, 2026. (Pet. ¶ 93.) While the removal period may be extended for failure to cooperate, Petitioner has not failed to cooperate. (*Id.* ¶¶ 33–34.) Her initial refusal

to sign documents she did not understand before consulting with her attorney did not constitute a refusal to cooperate, especially as she was told she had 30 days in which to provide the required information and as information sufficient to allow Respondents to obtain a travel document for Petitioner was provided within days and before the end of the removal period. (*Id.* at ¶¶ 33–35.) Thus, as the removal period has expired and there was no basis to extend it, there is no statutory basis for mandatory detention. (Trav. 4–6.) Further, to the extent Respondents did not have a Form I-205 warrant of removal at the time of Petitioner's arrest, her arrest was unlawful, as Respondents' own regulations require such a warrant. (*Id.* at ¶ 31.) And finally, even if her continued detention past the end of the removal period is authorized under 8 U.S.C. § 1231(a)(6), continued detention under that subsection is discretionary, not mandatory, and the regulations required that she be given an initial custody review and individualized custody decision before the end of the removal period, which did not occur. (Pet. ¶ 98.)

In response, Respondents assert, without explanation or support, that Petitioner is "well-within [sic] the 90-day removal period." (Ans. 4.) They also argue that Petitioner's "refusal to participate in obtaining travel documents on September 1, 2026 . . . tolls this period pursuant to 8 U.S.C. § 1231(a)(C)(1)." (Ans. 4.) They reference 8 U.S.C. § 1231(a)(6) for the proposition that continued detention is allowed for the time reasonably necessary to effect removal, but fail to note that that subsection authorizes continued detention only for four categories of detainees, and do not identify which of those categories might encompass Petitioner. (Ans. 3.) They cite *Zadvydas* for the proposition that "an alien is not entitled to habeas relief, after a post-removal detention period of six months, unless the alien can show that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" (Ans. 7 (quoting *Zadvydas*, 533 U.S. at 701).) From this, they argue that, because Petitioner has not yet been detained for six months and because there is a significant likelihood of her

removal in the near future, Petitioner's continued detention is permissible under *Zadvydas*. (Ans. 7–8.) However, Respondents fail to acknowledge that in *Zadvydas*, the two detainees whose detentions were at issue had both been convicted of felonies, and thus there was no question that their continued detentions were governed by 8 U.S.C. § 1231(a)(6). *Zadvydas*, 533 U.S. at 684–85. That Court was therefore concerned only with the question of how long detention authorized by 8 U.S.C. § 1231(a)(6) could last, and did not examine the question of how long post-removal-period detention could last for individuals who did not fall within one of 8 U.S.C. § 1231(a)(6)'s "four categories of people." *Johnson*, 596 U.S. at 578. As the *Zadvydas* Court stated regarding 8 U.S.C. § 1231(a)(6),

> [t]he post-removal-period detention statute applies to certain categories of aliens who have been ordered removed, namely, inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well as any alien "who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6) (1994 ed., Supp. V); see also 8 C.F.R. § 241.4(a) (2001). ***It says that an alien who falls into one of these categories "may be detained beyond the removal period*** and, if released, shall be subject to [certain] terms of supervision." 8 U.S.C. § 1231(a)(6) (1994 ed., Supp. V).

*Zadvydas*, 533 U.S. at 688–89 (emphasis added).

The question, then, is whether Petitioner falls within one of the categories of people for whom post-removal-period detention can be extended under 8 U.S.C. § 1231(a)(6). If Petitioner does not fall within one of these categories, it does not appear that her continued detention is authorized. Petitioner's 90-day removal period began on June 15, 2026, and ended on September 13, 2026. *See M.L.G.G. v. Wamsley*, No. 6:25-CV-02012-AA, 2025 WL 3539183, at *2 (D. Or. Dec. 10, 2025) ("The removal period begins to run, as relevant to this case, on '[t]he date the

order of removal becomes administratively final.'"). Her initial hesitation to sign paperwork she did not understand before consulting with her attorney is not the type of "bad faith failure to cooperate" that would trigger extension of the removal period under 8 U.S.C. § 1231(a)(1)(C). "[T]he 'overwhelming' weight of authority applying § 1231(a)(1)(C) indicates that 'the removal period is subject to tolling where the noncitizen acts to prevent his or her removal through judicial action, or by demonstrating some sort of bad faith failure to cooperate.'" *M.L.G.G.*, 2025 WL 3539183, at *2.

> Generally, courts have only tolled the removal period in cases where the alien has demonstrated some sort of bad faith failure to cooperate, such as providing the INS with false or inconsistent information regarding his identity or country of origin, or refusing to complete travel arrangements or name a country for deportation. Thus, where continued detention under § 1231(a)(1)(C) has been upheld, the alien subject to the removal order committed some affirmative and misleading act to thwart the removal process or expressly refused to cooperate.

*Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 501 (S.D.N.Y. 2009). Therefore, as Petitioner was "not removed within the removal period . . . pending removal, [she] shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3).

As there is no basis to extend the removal period under 8 U.S.C. § 1231(a)(1)(C), Petitioner could only be held in detention past the end of the removal period—that is, after September 13, 2026—if continued detention is authorized under 8 U.S.C. § 1231(a)(6). However, neither party has addressed this issue. In the normal course, the Court would order additional briefing from the parties regarding this question. In the instant case, though, at least according to Respondents' representations, the issue may well be mooted by Petitioner's imminent removal. As noted above, Respondents represented when they filed their Answer that they were trying to schedule Petitioner on a flight to Uganda on

October 5, 2026 (Palacios Decl. § 8), and they filed a Notice of Intended Removal on September 25, 2026, stating that Petitioner is scheduled for transfer outside the Central District on October 3, 2026, to effectuate her removal from the United States (ECF No. 11). Notably, however, while the Notice of Intended Removal states the precise date on which Petitioner will be transferred out of this District, it does not confirm any date for Petitioner's removal from the United States. (*Id.*) If Respondents intend to remove Petitioner promptly pursuant to her final order of removal, this Court cannot and will not prevent them from doing so. But from the record currently before the Court, it does not appear that Respondents have the authority to continue detaining Petitioner if her removal is not, in fact, effectuated in the very short term.

Therefore, the Court HEREBY ORDERS that Respondents must file, no later than October 6, 2026, ONE of the following: (1) confirmation that Petitioner has been removed to Uganda as anticipated OR (2) a brief of no more than three pages addressing the question of whether Petitioner's detention may be continued past the end of the removal period under 8 U.S.C. § 1231(a)(6) AND a copy of the warrant of removal for Petitioner.

DATED: October 2, 2026

CHRISTINA T. SHAY
UNITED STATES MAGISTRATE JUDGE